IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO. 1:05 CV 2605 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| v. | ) | |
| | ) | |
| ANNETTE GUY | ) | **MEMORANDUM OPINION** |
| | ) | |
| Defendant. | ) | |

On May 8, 2006, the United States of America ("Government") filed a *Motion for Summary Judgment* seeking judgment as a matter of law as to its Fraud Claims Act ("FCA"), unjust enrichment and payment by mistake claims against Defendant Annette Guy.  According to the Government, summary judgment is warranted because Guy is collaterally estopped from denying and/or litigating the issue of whether she falsely claimed over eight hundred hours of overtime which she, in actuality, did not work.  Because this issue had already been addressed in proceedings before the Merit System Protection Board ("MSPB"), the Government contends it cannot be re-litigated by Guy.  The Government further argues that as this finding of false overtime claims is central to all of the claims it has brought forth, it is entitled to judgment and damages under the FCA or, in the alternative, pursuant to its unjust enrichment and payment by mistake claims.  On May 18, 2006, the Government also filed a *Motion in Limine* based on the same premise of collateral estoppel.  Guy responded to the Government's *Motion for Summary Judgment* on June 1, 2006, and its *Motion in Limine* on May 30, 2006.

For reasons fully set forth below, the Magistrate Judge recommends both the Government's *Motion for Summary Judgment* and *Motion in Limine* be GRANTED in part and DENIED in part.

# I. BACKGROUND

On November 4, 2005, the Government filed suit against Guy alleging she presented her former employer, the Department of Veterans Affairs ("VA") with claims of overtime work she, in fact, did not perform.  Over a certain period of time which is currently in dispute,[1] Guy, who worked as a Medical Records Technician, claimed one thousand, two hundred and ninety-two hours of overtime[2] and was eventually paid approximately twenty-five thousand dollars in overtime pay. Upon learning of Guy's allegedly false overtime claims, the VA conducted an internal investigation which resulted in a finding that Guy had only performed three hundred and twenty-five hours of overtime work. The VA terminated Guy on April 6, 2001.

The investigation determination was based, in part, on the VA's official records kept in the VISTA computer system.  Guy, in claiming the overtime at issue, was responsible for performing the work typically performed by an outside contractor which involved transcribing radiology reports into the VISTA system, in addition to her normal duties.  According to the Government, Guy's immediate supervisor, Julietta Lewis, was told Guy could only perform the outside contractor work

---

[1]The Government contends the overtime at issue only covered the period between November 4, 1999 and March 12, 2000.  Guy asserts that the overtime hours claimed were from a longer period (Guy's *Motion to Dismiss in the Alternative Summary Judgment Motion for Leave to Move for Summary Judgment*, pp. 7-8).  She also argues the Government's assertion of the time period in which she claimed more than twelve hundred hours of overtime has changed frequently without explanation (Guy's *Motion to Dismiss in the Alternative Summary Judgment Motion for Leave to Move for Summary Judgment*, p. 9).

[2]There is some discrepancy as to the number of overtime hours during the relevant period Guy claimed to have worked.  The evidence provided, specifically the Initial Decision of Administrative Judge ("AJ") Scott Cooper of the MSPB, indicates Guy claimed both 1292 hours and 1357 hours of overtime (Government's *Motion for Summary Judgment*, Exhibit A, pp. 2, 5; Guy's *Motion to Dismiss in the Alternative Summary Judgment Motion for Leave to Move for Summary Judgment*, pp. 8, 9).

during overtime.  It further asserts Guy was never given permission to perform her normal work duties during overtime hours while performing the outside contractor work during her normal work hours.  Guy, however, contends she "was specifically authorized and commanded by my immediate supervisor, Julietta Lewis, to transcribe as many radiology reports during the regular hours and complete as many of my regular duties as I could during the overtime hours (Guy's *Motion to Dismiss in the Alternative Summary Judgment Motion for Leave to Move for Summary Judgment*, p. 10).  It is, however, undisputed that Guy was never given any limits on the amount of overtime she could perform to complete the outside contractor work.  The VISTA system, which kept track of all the cases entered into the system, including those cases for which Guy was responsible, showed Guy had only been entering files for 324.85 of the 1292 or 1357 hours of overtime she claimed.  Guy, however, questions the validity of the VISTA tracking system, contending another system, Lanier, more accurately tracked and recorded this information (Guy's *Motion to Dismiss in the Alternative Summary Judgment Motion for Leave to Move for Summary Judgment*, p. 15).

Guy sought to challenge her termination by filing an action with the MSPB on May 7, 2001.  A hearing conducted by AJ Cooper was conducted on June 13, 2001, during which Guy was represented by counsel.  AJ Cooper identified the issue of the case before him as "whether [Guy] did, in fact, work the overtime hours that she claimed" (Government's *Motion for Summary Judgment*, Exhibit A, p. 3).  He ultimately concluded, "the [VA] has proven, by a preponderance of the evidence, that [Guy] did not perform her assigned task during the majority of the overtime hours that she claimed" (Government's *Motion for Summary Judgment*, Exhibit A, p. 8).  In reaching this determination, AJ Cooper also determined in his *Initial Decision* that:

>   •   Guy was paid over $25,000 in overtime between November 4, 1999 and March 12, 2000 (Government's *Motion for*

*Summary Judgment*, Exhibit A, p. 2);

- The VISTA system accurately showed the time each and every entry was made into the system (Government's *Motion for Summary Judgment*, Exhibit A, pp. 4, 6);

- The VISTA system indicated Guy only entered files for 325 of the 1292 overtime hours claimed, which left over 965 overtime hours unaccounted for (Government's *Motion for Summary Judgment*, Exhibit A, pp. 5, 6, 8);

- The Lanier system records were not as accurate as those of the VISTA system in measuring Guy's performance of the outside contractor work, as it only noted when the operator, such as Guy, stated the work had been finished and, thus, could be manipulated (Government's *Motion for Summary Judgment*, Exhibit A, p. 6);

- Any time Guy spent performing her regular duties during overtime was an unauthorized use of overtime (Government's *Motion for Summary Judgment*, Exhibit A, p. 7);

- Guy did not spend any material amount of time performing her normal duties as only a small portion of Guy's work could be performed during overtime hours (Government's *Motion for Summary Judgment*, Exhibit A, p. 7);

- Guy's contention she spent many hours doing research for the radiology reports she entered into the VISTA system was not credible (Government's *Motion for Summary Judgment*, Exhibit A, p. 8); and

- The VA proved by a preponderance of the evidence that Guy did not perform her assigned task during the majority of overtime hours she claimed (Government's *Motion for Summary Judgment*, Exhibit A, p. 8).

According to AJ Cooper, the VA's act of terminating her employment was appropriate (Government's *Motion for Summary Judgment*, Exhibit A, p. 10).

Guy unsuccessfully appealed AJ Cooper's decision to the MSPB on January 22, 2002. Although she was informed she could further appeal the decision to the United States Court of

Appeals for the Federal Circuit, there is no indication she did so (Government's *Motion for Summary Judgment*, Exhibit B, pp. 1-2). There is some indication, however, that she filed a Title VII action in district court against the VA, but that claim was eventually dismissed on summary judgment on August 27, 2003.

The Government now brings forth claims regarding Guy's conduct which led to her eventual termination. Specifically, they allege two violations of the FCA, common law fraud, payment by mistake, and unjust enrichment. In support of each of these claims, the Government seeks to rely on AJ Cooper's *Initial Order*, setting forth his conclusions as to the appropriateness of Guy's termination, pursuant to the doctrine of collateral estoppel.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate where the entire record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Non-moving parties cannot simply rest upon the allegations of their pleadings or general allegations in establishing that issues of fact may exist. *Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273, 1275 (6th Cir. 1974). The Supreme Court has held that, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The evidence need not be in a form admissible at trial in order to avoid summary judgment, but Rule 56(e) requires the opposing party "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admis-

-5-

sions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.

The Sixth Circuit in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989), has interpreted *Celotex* and two related cases, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574 (1986), as establishing a "new era" of favorable regard for summary judgment motions. *Street* points out the movant has the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. 886 F.2d at 1479. This burden may be met by pointing out to the court the non-movant, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case. *Id.*

In ruling on a motion for summary judgment, the Court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party opposing the motion. *See Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir. 1990). The Court must also determine "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other." *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249 (1986). In reaching such a determination, however, the Court is not to decide disputed questions of fact, but only to determine whether genuine issues of fact exist. *Id.* at 248-49.

## B. Collateral Estoppel

According to the Government, because AJ Cooper concluded the VA proved by a preponderance of the evidence that Guy "did not perform her assigned task during the majority of the overtime hours that she claimed," Guy should not be permitted to re-litigate that issue. The Court finds that although this contention has some merit, the extent to which the Government seeks

to apply this bar does not.

The general principle of collateral estoppel is that later courts should honor the first actual decision of a matter that has been actually litigated.  *See* 18 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* §4416, p. 386 (2d ed. 2002).

> [A] right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.

*Southern Pacific Railroad v. United States*, 168 U.S. 1, 48-49 (1897).  The purpose of this rule is to "'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'"  *United States v. Mendoza*, 464 U.S. 154, 158 (1984), *quoting Allen v. McCurry*, 449 U.S. 90, 94 (1980).

In seeking to foreclose Guy from re-litigating an issue that she has previously litigated unsuccessfully before the MSPB, the Government is attempting to exercise the doctrine of mutual offensive collateral estoppel.  The Supreme Court has determined that the "preferable approach for dealing with these problems in federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied.  The general rule should be that ... [where] the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979).  One such example of potential unfairness to a defendant offered by the Supreme Court was a situation in which the second action affords the defendant procedural opportunities unavailable in the first action (*e.g.*, full scale discovery, an

opportunity to call witnesses) that could readily cause a different result.  *See id.* at 330-31.  The Court noted that the potential for unfairness is particularly acute in cases of offensive collateral estoppel because the defendant against whom estoppel is asserted typically will not have chosen the forum in the first action.  *See id.* at 331.

In the present case, there is no indication the implementation of offensive collateral estoppel would result in unfairness to Guy.  Moreover, Guy brought action against the VA when bringing her case before the MSPB, thus she chose the forum and, consequently, the available procedures in that forum.  And she took full advantage of those procedures, calling witnesses to testify on her behalf, cross examining those who did not, and introducing evidence into the record.  Also of some note is the fact that, unlike at present, Guy was represented by counsel during the majority of the proceedings before the MSPB.  Indeed, she had counsel throughout the period when the record was open and up until a month following the administrative hearing.  That being said, the Court concludes the use of offensive collateral estoppel would not be unfair to Guy and, as such, such use shall be permitted.

To establish collateral estoppel, it must be shown that: (1) the precise issue raised in the present case was raised and actually litigated in the prior proceeding; (2) the issue was necessary to the outcome of the prior proceeding; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought had a full and fair opportunity to litigate the issue in the prior proceeding.  *See Aircraft Braking Systems Corp. v. Local 856, UAW*, 97 F.3d 155, 161 (6th Cir. 1996); *see also United States v. Cinemark USA, Inc.*, 348 F.3d 569, 582 (6th Cir. 2003).  The Court concludes that because the Government has sufficiently proven all four elements of the collateral estoppel doctrine, Guy is barred from re-litigating the issue of whether she

-8-

performed her assigned task during the majority of the overtime hours she claimed.

As to the first element, there appears to be little issue.  The FCA requires the Government establish that Guy presented a claim for payment that was false or fraudulent.  Thus, in applying the specific factual allegations of this case, the Government must prove the overtime hours Guy claimed were false or fraudulent.  AJ Cooper of the MSPB expressly stated the issue before him was, "[W]hether [Guy] did, in fact, work the overtime hours that she claimed."  (Government's *Motion for Summary Judgment*, Exhibit A, p. 3).  He ultimately concluded, somewhat more narrowly, that the VA proved by a preponderance of the evidence that Guy "did not perform her assigned task during the majority of the overtime hours that she claimed" (Government's *Motion for Summary Judgment*, Exhibit A, p. 8).  This finding clearly addresses one of the issues presently before the Court.[3]  Indeed, all of the claims pending against Guy concern the veracity and validity of the overtime she claimed during the relevant period.  Thus, any determination as to the accuracy of the overtime claimed clearly touches upon the present issue regarding the validity of the time claimed.

The Government has also satisfied the second element of collateral estoppel.  In the prior proceeding before the MSPB, Guy challenged her termination by the VA as a result of an investigation finding she did not work the overtime hours she claimed.  Logic dictates that AJ Cooper's conclusion in the MSPB proceeding – that Guy did not perform her assigned task during the majority of the overtime hours claimed – was necessary to the outcome of the Guy's appeal of her termination.  Indeed, to affirm Guy's termination, it obviously had to be determined whether she actually worked the overtime hours claimed for her assigned task, *i.e.*, the outside contractor's work.

---

[3]The Court also notes the standard of proof in the present case is the same as that utilized before the MSPB – a preponderance of the evidence (Government's *Motion for Summary Judgment*, Exhibit A, p. 8).  *See* 31 U.S.C. §3731(c).

Regarding the third element, the Court concludes the MSPB proceeding before AJ Cooper resulted in a valid, final judgment on the merits.  AJ Cooper considered the evidence in the record and concluded in his *Initial Decision* that Guy's termination was appropriate.[4]  A January 22, 2002 *Final Order* issued by the MSPB affirmed the decision of AJ Cooper and specifically stated, "The initial decision of the administrative judge is final.  This is the Board's final decision in this matter" (Government's Exhibit B, p. 2).  Although Guy was informed in that same order she could appeal the decision of the MSPB to the United States Court of Appeals for the Federal Circuit, she did not, thus rendering AJ Cooper's Initial Decision a final judgment on the merits.

The Court also concludes the last element of collateral estoppel, which requires that the party against whom collateral estoppel is asserted have had a "full and fair opportunity" in the prior case to litigate the issue sought to be precluded, has also been met.  A copy of the transcript of the proceeding before AJ Cooper was provided to the Court which supports the conclusion Guy had a full and fair opportunity to litigate the issue of whether she actually performed her assigned task during the majority of the overtime hours she claimed.  From the transcript, it is evident Guy's counsel was able to present evidence, and to call and cross examine witnesses on her behalf.[5]

---

[4]As to whether Guy agrees with the ultimate conclusion reached by AJ Cooper, the Court notes that "the res judicata consequences of a final, unappealed judgment on the merits [is not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case."

[5]Although Guy was represented by counsel during the hearing before the MSPB, the record indicates Guy began to represent herself some time after.  It is unclear, however, when exactly this event took place. Nonetheless, although *pro se* litigants must be afforded special protection, the mere fact that Guy was not represented for a portion of her MSPB proceedings does not preclude the Court from applying collateral estoppel.  *See Moss v. Department of the Air Force*, 230 F.3d 1372, 1999 WL 1211870, *3 (Fed. Cir. Dec. 10, 1999); *In re Tsamasfyros*, 940 F.2d 605, 607 (10th Cir. 1991); *In re Weston*, 307 B.R. 340, 344 (Bkrtcy. D.N.H. 2004); *Harmon v. Matarazzo*, No. 95-CV-3975, 1997 WL 94233, *2 (E.D.N.Y. Feb. 27, 1997); *In re*

-10-

The fact that the prior decision the Government is relying upon in making its collateral estoppel argument was rendered in an administrative forum raises the issue of whether the MSPB afforded Guy a full and fair opportunity to litigate the issue presently before the Court. The Court concludes it did. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *Unites States v. Utah Construction and Mining Co.*, 384 U.S. 394, 422 (1966); *see also United States v. Payne*, 2 F.3d 706, 708 (6th Cir. 1993). The principle behind collateral estoppel – "[a] losing litigant deserves no rematch after a defeat fairly suffered ... To hold otherwise would, as a general matter, impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution" – is equally as applicable to a situation in which an issue has been resolved by an administrative agency, as it is when the issue is decided by a court of law. *Astoria Federal savings and Loan Assoc. v. Solimino*, 501 U.S. 104, 107-08 (1991) (internal citations omitted). Consequently, courts have determined decisions rendered by the MSPB are accorded collateral estoppel effect. *See Gibson v. United States Postal Serv.*, 380 F.3d 886, 890 (5th Cir. 2004); *United States v. Incorporated Village of Island Park*, 791 F. Supp. 354, 378-79 (E.D.N.Y. 1992); *Barnes v. Oody*, 514 F. Supp. 23, 25 (E.D. Tenn. 1981).

Based on the above, the Court concludes the Government has satisfied all of the elements

---

*Tam*, 136 B.R. 281, 287 (Bkrtcy. D. Kan. 1992); *Ibrahim v. New York State Department of Health*, 692 F. Supp. 1471, 1473 (E.D.N.Y. 1988). Indeed, to hold otherwise would effectively eliminate the doctrine of collateral estoppel in proceedings involving *pro se* litigants. Moreover, it appears Guy was represented by counsel during the majority of the proceedings before the MSPB and all throughout the hearing conducted by AJ Cooper. As such, the Court concludes her partial *pro se* status did not prevent Guy from having a "full and fair opportunity" to litigate the issue of the validity of her overtime reports during the MSPB proceeding.

of collateral estoppel. The extent of the bar created by this successful argument by the Government is set forth in detail below.

### 1. The Extent of Collateral Estoppel

The Government contends that, "In order to uphold the agency's termination of Guy's employment, it was necessary for the AJ in the MSPB proceeding to determine the issue of whether or not Guy had actually worked the overtime hours claimed" (Government's *Motion in Limine*, p. 13). AJ Cooper did identify the issue of the case before him as whether "[Guy] did, in fact, work the overtime hours that she claimed." His resulting determination, however, was much more narrow than the issue as he initially presented it. Indeed, in upholding Guy's termination, he concluded only that the VA proved "by a preponderance of the evidence, that [Guy] did not perform her *assigned task* during the majority of the overtime hours that she claimed" (Government's *Motion for Summary Judgment*, Exhibit A, p. 8) (emphasis added). Clearly, this conclusion is narrower than the issue presented because AJ Cooper considered only Guy's "assigned task," *i.e.*, the outside contractor's task of entering reports into VISTA, and not the regular work duties she performed during overtime hours. This limited consideration is evidenced by his earlier conclusion Guy was not authorized to perform her regular work duties as overtime and the reasoning he applied to his ultimate determination:

> The VISTA logs show that [Guy] only spent approximately 325 hours of overtime actually entering data into the VISTA system. *This was the only task that [Guy] was authorized to perform while on overtime. This leaves over 965 hours of overtime unaccounted for.* [Guy] could provide no credible explanation for her activity during this time. Therefore, I find that the [VA] has proven, by a preponderance of the evidence, that [Guy] did not perform her assigned task during the majority of the overtime hours that she claimed.

-12-

(Government's *Motion for Summary Judgment*, Exhibit A, p. 8) (emphasis added).

AJ Cooper concluded Guy admitted she had not received authorization to perform her regular work duties during overtime and that this rendered the overtime she claimed for these tasks unauthorized and unsubstantiated.  However, concluding Guy did not perform *authorized* overtime during the majority of overtime hours claimed, does not necessarily translate to the determination Guy submitted a false overtime report, committed a fraud against the Government, or received an overtime payment to which she was not entitled.

The Government bears the burden of proving that the overtime claimed for Guy's regular work duties constituted fraud or an unjust benefit, and as a result, it is entitled to damages for the money paid toward that unauthorized overtime. The AJ's simple declaration Guy did not perform *authorized* overtime during the majority of overtime hours is insufficient to satisfy this requirement. As such, the Court finds that the scope of collateral estoppel only extends to the conclusion that, "[Guy] did not perform *her assigned task* during the majority of the overtime hours that she claimed."[6] Whether Guy's overtime claim for hours spent performing regular work duties was false, fraudulent, or something she was not entitled to be paid for and is, therefore, something for which

---

[6]Later in his decision, AJ Cooper concluded, "As noted above, I find that [Guy] was not working during the majority of hours that she claimed overtime" (Government's *Motion for Summary Judgment*, Exhibit A, p. 8).  However, it is clear this statement is based on his earlier determination that Guy did not perform her "assigned task" during the majority of overtime claimed  (Government's *Motion for Summary Judgment*, Exhibit A, p. 8).  Nevertheless, the Government relies on this statement in arguing for a broader application of collateral estoppel than the one adopted by the Court.  The Government indicated, "In order to uphold the agency's termination of Guy's employment, it was necessary for the AJ in the MSPB proceeding to determine the issue of whether or not Guy had actually worked the overtime hours claimed" (Government's *Motion in Limine*, p. 13).  AJ Cooper, however did not simply determine whether Guy worked the overtime hours she claimed but whether the overtime she claimed was both *authorized* and performed.  Couching the AJ's determination in the manner adopted by the Government, therefore, is disingenuous.

-13-

the Government should receive damages, is an issue the Government must prove to the fact finder.[7]

Guy, thus, is free to litigate the issues of: (1) whether the overtime she claimed for performing her regular duties was something that properly entitled her to overtime pay and was not false or fraudulent under the FCA; and (2) how many hours she spent performing her regular work duties during overtime.

The Government has contended that even if the overtime hours Guy spent performing her work hours were favorably considered, "a gap in excess of 483 hours of unaccounted for overtime hours" would still exist  (Government's *Response to Defendant's Motion to Dismiss and Motion for Summary Judgment*, p. 10).  The Court, however, concludes the record is devoid of any indication from either party as to how much time Guy spent performing her regular duties during overtime.[8]

---

[7]Indeed, the Government, in seeking summary judgment, did not argue the overtime claimed by Guy for her regular work duties constituted a fraudulent or false claim.  Instead, it relied solely on AJ Cooper's decision regarding Guy's assigned tasks in seeking judgment as a matter of law.

[8]The Government has argued that, "[A]ssuming that Defendant actually did perform 422.27 hours of her regular duty work on overtime, it would still leave a gap in excess of 483 hours of unaccounted for overtime hours" (Government's *Response to Defendant's Motion to Dismiss and Motion for Summary Judgment*, p. 10).  The only indication the Government has provided as to the source of this information was a statement from the declaration of Guy's past supervisor, Patricia Gheen, "From November 11, 1999 through March 11, 2000, the VA's computer records show that Defendant spent 422.27 hours during her regular shift transcribing radiology records" (Government's *Response to Defendant's Motion to Dismiss and Motion for Summary Judgment*, Exhibit A, ¶15).  The Government, however, has failed to provide any explanation as to how a report that indicated Guy performed 422.27 hours of her overtime tasks during her regular work hours, translates into Guy performing a maximum of 422.27 of her regular work duties during overtime hours.  AJ Cooper did indicate Guy "admitted that she did not require overtime to perform her normal duties," but as this observation was not necessary to his determination, it is without binding affect (Government's *Motion for Summary Judgment*, Exhibit A, p. 7).  Thus, the unexplained conclusion asserted by the Government, is clearly insufficient to establish the number of hours Guy spent performing her regular work duties during overtime hours.  Moreover, Guy contends the length of time she spent performing her regular duties during overtime "could not be tracked and therefore, the overtime could not

-14-

AJ Cooper also did not address the actual number of hours Guy spent performing her regular work duties as overtime, but only whether she was authorized to do so.[9]   Due to this absence, the Court cannot conclude that the overtime report Guy submitted was false or fraudulent or that Guy was not entitled to the overtime pay she received.[10]  Guy, herself, indicated, "There is no system to record or quantify the regular duties that I performed [during overtime hours]" (*Defendant's Answer to Plaintiff's Motion for Summary Judgment*, p. 3).  If the Government is unable to show, both, that the remaining 965 hours of claimed overtime unverified by VISTA were not, in fact, accumulated by Guy in performing her regular duties, and that the overtime Guy claimed for her regular duties

---

merely be tracked by radiology "data entries," [*i.e.*, VISTA]," thus, rendering this a disputed issue of fact (Guy's *Motion to Dismiss in the Alternative Summary Judgment Motion for Leave to Move for Summary Judgment*, p. 10).  The fact that neither party has provided any evidence to support their positions makes it clear this is an issue that must be addressed at trial.

[9]The Court recognizes that AJ Cooper concluded Guy did not spend "any material amount of overtime working on her normal duties," and that "only a small portion of [Guy's] normal duties could be performed during overtime hours" (Government's *Motion for Summary Judgment*, Exhibit A, p. 7).  These findings, however, were not necessary to his ultimate conclusion that Guy "did not perform her assigned task during the majority of the overtime hours that she claimed."  Indeed, AJ Cooper determined the VISTA system only accounted for 325 hours of overtime, thus leaving the remaining 965 hours unaccounted for – this number of unaccounted for hours, naturally, includes all the overtime Guy claimed for performing her regular work duties, which was not recorded by VISTA and which AJ Cooper determined was unauthorized and, therefore, unsubstantiated.  Consequently, the conclusion as to the amount of time Guy spent performing her normal work duties as overtime or how much of her duties she could have performed during overtime was inconsequential, as that time was deemed unsubstantiated.  As a result, Guy is not collaterally estopped from litigating the issue as to how much time she spent performing her regular work duties as overtime.

[10]If the number of hours Guy spent performing her regular duties during overtime had been provided and that number, in addition to the number of hours verified by VISTA, was less than 1292 hours, there would be no question as to the falsity of the overtime report submitted by Guy.  The only remaining issue would be the extent of the falsity of the report, *i.e.*, whether those hours spent performing her regular duties during overtime hours also constituted a false report, therefore, warranting increased damages under the FCA.  Without such information, there is no way to determine whether the hours beyond those confirmed by VISTA can be fully accounted for.

constituted a false or fraudulent act, or something for which she should not have been paid, then it cannot receive damages for the overtime paid to Guy during the relevant period.

Upon review of AJ Cooper's decision, the Magistrate Judge concludes Guy is barred from re-litigating whether: (1) she performed her assigned task during the majority of the overtime hours that she claimed; (2) she was *authorized* to perform her regular work duties as overtime; (3) she was *given permission* to perform the assigned overtime work during her regular hours; (4) the VISTA system *accurately* showed the time each and every entry was made into the system; (5) the VISTA records show Guy spent only 325 hours entering records into the system; and (6) Guy was paid over $25,000 in overtime pay between November 4, 1999 and March 12, 2000.[11]  These determinations were necessary to AJ Cooper's decision, they were all litigated at the MSPB level and, thus, they may not be re-litigated before the Court.

## C.  The Government's FCA Claim

Based on the conclusions in the preceding section, the Court concludes the Government is not entitled to summary judgment on its FCA claim.  To bring a successful claim under the FCA, the Government bears the burden of proving by a preponderance of the evidence that: (1) Guy presented a claim for payment or approval or to decrease an obligation owed to the Government; (2)

---

[11]Because of the discrepancy in the record as to how many overtime hours Guy claimed (AJ Cooper cited both 1292 and 1357 hours), the Court reasonably finds that this conclusion should not have a binding affected on the present litigation.  The same goes for AJ Cooper's determination Guy did not spend "many" overtime hours researching words for the radiology transcriptions.  The Court finds it impossible to measure the barring affect of such a vague conclusion.  Indeed, how much is "many?"  As such, Guy will not be barred from litigating this issue.

the claim was false or fraudulent; (3) Guy acted knowingly.[12]  *United States ex rel. Schell v. Battle Creek Health Sys.*, 419 F.3d 535, 538 (6ᵗʰ Cir. 2005).  Because the issues of (1) whether Guy's claim for overtime for hours spent performing her regular work duties constituted a false or fraudulent claim as set forth under the FCA, and (2) the specific amount of time Guy spent performing her regular work duties during overtime, were unaddressed by AJ Cooper's decision and by the Government in its *Motion for Summary Judgment*, the second and third elements of the FCA have not yet been satisfied.  As such, summary judgment for this claim is not appropriate.

### D.  The Government's Payment by Mistake of Fact Claim

The Government has also sought to recover the overtime paid to Guy under a payment by mistake theory of recovery.  The Court recognizes that this is a legitimate cause of action, as the Supreme Court has determined, "The Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid."  *United States v. Wurts*, 303 U.S. 414, 415 (1938); *see also United States v. MacPhail*, 149 Fed. Appx. 449, 454 (6ᵗʰ Cir. 2005) (there is a "long-standing policy that the Government should not be harmed by the actions of its agents in incorrectly disbursing funds from the public fisc when the error arose from a mistake of fact").  Indeed, "'[i]t is well established that parties receiving monies from the Government under mistake of fact or law are liable ... to refund them, and that no specific statutory authorization upon which to base a claimed right of set-off or an affirmative action for recovery of these monies is necessary.'"  *United States v. The Estate of Williams Cole*, 620 F. Supp. 126, 128-29 (W.D. Mich. 1985), *quoting Disilvestro v. United States*, 405 F.2d 150, 155 (2d Cir. 1968).

---

[12]The FCA defines knowingly as acting with actual knowledge of the information, or with deliberate ignorance or reckless disregard of the truth or falsity of the information.

According to the Government, because it was "already determined in the MSPB proceeding that the VA paid Guy in excess of $25,000 for overtime hours she claimed to have worked ... [and it] was also determined that Guy did not actually work 965 hours of overtime she claimed to have worked ... [i]t follows that Guy was not entitled to be paid for those hours she did not work." However, the Court has already concluded that AJ Cooper did not determine Guy "did not actually work 965 hours of overtime she claimed," only that Guy did not perform 965 hours of authorized overtime, *i.e.*, did not perform her *assigned task* during the *majority* of the overtime hours that she claimed. Thus, the issue of the affect of Guy performing her regular work duties during overtime still looms.

Based on the evidence currently before the Court, it is apparent that in order to launch a successful payment by mistake claim in the present case, the Government must prove not only that a VA employee is not entitled to receive overtime pay when she is not given express permission, *i.e.*, authorized, to perform certain tasks on overtime (but is given permission to perform overtime in general), but also that such an employee is not entitled to overtime pay when she was not expressly prohibited from performing certain tasks on overtime. As stated above, AJ Cooper concluded Guy was not authorized to perform her regular duties during overtime. He, however, never concluded Guy was expressly told she could not perform her regular work duties during overtime. The Government, notably, argues only that Guy's immediate supervisor, Ms. Lewis, was told the radiology reports were only to be transcribed during overtime and not regular work hours, offering the MSPB testimony of Guy's coworker, Angela Broxton, and a declaration by Ms. Gheen, Ms. Lewis's supervisor, in support (Government's *Response to Defendant's Motion to Dismiss and Motion for Summary Judgment*, pp. 7-8). This argument, obviously, is on shaky ground, not only

-18-

because the Government fails to even allege, let alone prove, Guy was aware of this restriction, but also because the statements upon which it relies are less concrete than they appear at first glance.[13] Indeed, there is no bridge between the directive given to Ms. Lewis by Ms. Gheen and the instructions Ms. Lewis gave to Guy.  Additionally, no work rule/policy or sworn statement has been provided to the Court on the issue of entitlement and/or restrictions to overtime pay for VA employees.  As such, the Court cannot conclude Guy was paid for overtime "wrongfully, erroneously, or illegally."  Consequently, the Court denies the Government's request for summary judgment on this matter.

### E.  The Government's Unjust Enrichment Claim

The Government has also brought forth an unjust enrichment claim.  As with its payment by

---

[13]The Court notes Ms. Broxton testified her supervisor, Ms. Lewis, informed her that the radiology reports were to be done only on overtime (MSPB Hearing Transcript, p. 136). However, Ms. Broxton also testified that when she informed Ms. Lewis that doctors were requesting the radiology transcriptions "stat" during regular work hours, she directed her to do this work, despite the fact that it was during regular hours (MSPB Hearing Transcript pp. 121-22, 123-24).  Thus, the fact that Ms. Lewis initially told Ms. Broxton only to perform the transcriptions during overtime holds very little persuasive weight if Ms. Lewis also encouraged her to do the exact opposite at another time.

Ms. Gheen testified she told Ms. Lewis the transcriptions were only to be done on overtime (MSPB Hearing Transcript, p. 78).  The correspondence she relied upon in support of this testimony (as she could not recall whether any other written or verbal discussion with Ms. Lewis on this topic took place) was a solitary email she sent to Ms. Lewis, which stated something along the lines of, "Julietta, can you please check with [Guy and Ms. Broxton] ... [t]o see if they would be willing to do some overtime for the next three or four weeks to keep the radiology dictation up to date. ... I would appreciate it if you would page me today to let me know if they are willing to work this overtime." (MSPB Hearing Transcript, pp. 87-88, 94-95). Obviously, no express prohibition was made as to the performance of regular work duties during overtime hours.  Indeed, a directive that prohibits the performance of work designated solely for overtime during regular work hours (if this email is generously read to be such a directive), does not necessarily translate to a directive that prohibits the performance of regular work duties during overtime hours. There was also no testimony offered by either individual that Guy was made aware of any restriction on this work.

mistake of fact claim, the Government contends it is entitled to summary judgment under an unjust enrichment theory of recovery based on the conclusions set forth in AJ Cooper's *Initial Order*.  To establish an unjust enrichment claim, the Government must prove: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and, (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984); *see also Hollis Towing v. Greene*, 800 N.E.2d 1178, 1179 (Ohio Ct. App. 2003) ("to recover under the related doctrine of unjust enrichment, a plaintiff must show that he conferred a benefit upon another and that the circumstances render it unjust and inequitable to permit the other to retain the benefit without making payment therefor.")

　　　In seeking summary judgment on this claim, the Government contends, "Guy's conduct has unjustly enriched her with federal monies which in good conscience she should not be allowed to retain."  The Court concludes, however, that the Government has not satisfied any of the elements of its unjust enrichment claim.  As stated in the above section, the Government has not yet proved that a VA employee is not entitled to receive overtime pay when she is not given express permission, *i.e.*, authorized, to perform certain tasks on overtime (but is permitted to perform overtime in general).  It has also failed to establish that such an employee is not entitled to overtime pay when she was not expressly prohibited from performing certain tasks on overtime.  Without establishing Guy was not entitled to the overtime she received for performing her regular work on overtime, the Government cannot argue that Guy received a benefit and thus, whether she had knowledge of said benefit and whether the retention of that benefit would be unjust.  Thus, again, the Government's request for summary judgment must be denied.

-20-

### III.  <u>DECISION</u>

Based on the foregoing, the Court GRANTS in part and DENIES in part, the Government's *Motion for Summary Judgment* and *Motion in Limine*.  Specifically, the Court finds the limited application of collateral estoppel would be appropriate in this case.  As such, Defendant Annette Guy is collaterally estopped from re-litigating whether: (1) she performed her assigned task during the majority of the overtime hours that she claimed; (2) she was authorized to perform her regular work duties as overtime; (3) she was given permission to perform the assigned overtime work during her regular hours; (4) the VISTA system *accurately* showed the time each and every entry was made into the system; (5) the VISTA records show Guy spent only 325 hours entering records into the system; and (6) Guy was paid over $25,000 in overtime pay between November 4, 1999 and March 12, 2000.

<u>s/ Kenneth S. McHargh</u>
Kenneth S. McHargh
United States Magistrate Judge

Date: <u>July 3, 2006</u>

-21-