IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO. 1:05 CV 2605 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| v. | ) | |
| | ) | |
| ANNETTE GUY | ) | **MEMORANDUM OPINION** |
| | ) | |
| Defendant. | ) | |

On May 18, 2006, Defendant Annette Guy filed a *Motion to Dismiss, in the Alternative Summary Judgment Motion for Leave to Move for Summary Judgment*, seeking to have all claims against her dismissed as a matter of law on several diverse grounds. Plaintiff United States of America ("Government"), filed a response on June 5, 2006. For the following reasons, the Court DENIES Guy's *Motion to Dismiss, in the Alternative Summary Judgment Motion for Leave to Move for Summary Judgment*.

### I. BACKGROUND

On November 4, 2005, the Government filed suit against Guy alleging she presented her former employer, the Department of Veterans Affairs ("VA") with claims of overtime work she, in fact, did not perform. Over a certain period of time which is currently in dispute, Guy, who worked as a Medical Records Technician, claimed one thousand, two hundred and ninety-two hours of overtime and was eventually paid approximately twenty-five thousand dollars in overtime pay. Upon learning of Guy's allegedly false overtime claims, the VA conducted an internal investigation which resulted in a finding that Guy had only performed three hundred and twenty-five hours of overtime work. The VA terminated Guy on April 6, 2001.

The investigation determination was based, in part, on the VA's official records kept in the

VISTA computer system.  Guy, in claiming the overtime at issue, was responsible for performing the work typically performed by an outside contractor which involved transcribing radiology reports into the VISTA system, in addition to her normal duties.  According to the Government, Guy's immediate supervisor, Julietta Lewis, was told Guy could only perform the outside contractor work during overtime.  It further asserts Guy was never given permission to perform her normal work duties during overtime hours while performing the outside contractor work during her normal work hours.  Guy, however, contends she "was specifically authorized and commanded by my immediate supervisor, Julietta Lewis, to transcribe as many radiology reports during the regular hours and complete as many of my regular duties as I could during the overtime hours (Guy's *Motion to Dismiss in the Alternative Summary Judgment Motion for Leave to Move for Summary Judgment*, p. 10).  It is, however, undisputed that Guy was never given any limits on the amount of overtime she could perform to complete the outside contractor work.  The VISTA system, which kept track of all the cases entered into the system, including those cases for which Guy was responsible, showed Guy had only been entering files for 324.85 of the 1292 or 1357 hours of overtime she claimed.

Guy sought to challenge her termination by filing an action with the MSPB on May 7, 2001.  A hearing conducted by Administrative Judge ("AJ") Scott Cooper was conducted on June 13, 2001, during which Guy was represented by counsel.  AJ Cooper identified the issue of the case before him as "whether [Guy] did, in fact, work the overtime hours that she claimed" (Government's *Motion for Summary Judgment*, Exhibit A, p. 3).  He ultimately concluded, "the [VA] has proven, by a preponderance of the evidence, that [Guy] did not perform her assigned task during the majority of the overtime hours that she claimed" and, therefore, the VA's act of terminating her employment

was appropriate (Government's *Motion for Summary Judgment*, Exhibit A, pp. 8, 10).

Guy unsuccessfully appealed AJ Cooper's decision to the MSPB on January 22, 2002. Although she was informed she could further appeal the decision to the United States Court of Appeals for the Federal Circuit, there is no indication she did so (Government's *Motion for Summary Judgment*, Exhibit B, pp. 1-2). There is some indication, however, that she filed a Title VII action in district court against the VA, but that claim was eventually dismissed on summary judgment on August 27, 2003.

The Government now brings forth claims regarding Guy's conduct which led to her eventual termination. Specifically, they allege two violations of the FCA, common law fraud, payment by mistake, and unjust enrichment. In support of each of these claims, the Government seeks to rely on AJ Cooper's decision setting forth his conclusions as to the appropriateness of Guy's termination, pursuant to the doctrine of collateral estoppel.

On January 24, 2006, Guy filed a *Motion to Dismiss*, contending the statute of limitations period had expired prior to the filing of this case and, as such, dismissal of the FCA claims against her was warranted. Judge Daniel Polster, who originally had jurisdiction over this case before both parties consented to the jurisdiction of this Magistrate Judge, denied her motion on the merits without waiting for the Government to file a responsive brief. On May 8, 2005, the Government sought summary judgment based on a theory of collateral estoppel and the Court, on July 3, 2006, concluded that limited application of collateral estoppel was appropriate and, thus, granted that motion in part.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard[1]

Summary judgment is appropriate where the entire record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Non-moving parties cannot simply rest upon the allegations of their pleadings or general allegations in establishing that issues of fact may exist. *Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273, 1275 (6th Cir. 1974). The Supreme Court has held that, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The evidence need not be in a form admissible at trial in order to avoid summary judgment, but Rule 56(e) requires the opposing party "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.

The Sixth Circuit in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989), has interpreted *Celotex* and two related cases, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574 (1986), as establishing a "new era" of favorable regard for summary judgment motions. *Street* points out the movant has the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the

---

[1] Guy has titled the her present pending motion a *Motion to Dismiss in the Alternative Summary Judgment Motion for Leave to Move for Summary Judgment*. However, because she relies on matters outside that set forth in the pleading, the Court will treat her motion as a motion for summary judgment. *See* Fed. R. Civ. P. 12(b).

non-movant's case. 886 F.2d at 1479. This burden may be met by pointing out to the court the non-movant, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case. *Id.*

In ruling on a motion for summary judgment, the Court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party opposing the motion. *See Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir. 1990). The Court must also determine "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other." *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249 (1986). In reaching such a determination, however, the Court is not to decide disputed questions of fact, but only to determine whether genuine issues of fact exist. *Id.* at 248-49.

### B. 31 U.S.C. §3808(a) and (b)

Relying upon 31 U.S.C. §3808(a)(b), Guy contends she was wrongly denied a hearing regarding the FCA claims against her. This statute, however, is not applicable to the present case as it concerns only allegations of false claims brought before an administrative body, as is evidenced from the title of the chapter under which the statute falls: Administrative Remedies for False Claims and Statements. Indeed, liability for filing false claims under this Chapter is set forth in 31 U.S.C. §3802; the Government, however, did not pursue its claims against Guy administratively but rather filed its action in this Court pursuant to 31 U.S.C. §3729. Therefore, Guy's assertion she was entitled to a hearing is meritless.

### C. MSPB Appeal

Guy contends, "I discovered that the attorney signed the MSPB appeal, but did not have the

-5-

legal authority to do so because he had not been designated. ... As a result, no appeal has been filed. Therefore, I could refile the civil action regarding my termination and case #97-1749 because the EEO complaint had been filed first, not the MSPB ... ." Because she is less than clear in her argument, the Court is not entirely certain of what Guy seeks to gain from this assertion and can only assume she is challenging the Government's request that she be collaterally estopped from re-litigating issues already raised in the MSPB proceedings, by challenging the Government's position the decision of the MSPB was a final decision on the merits. In so arguing, she cites 5 C.F.R. §1201.24(a) which concerns the appellate procedures of the MSPB. The Court recognizes that the MSPB has appellate jurisdiction over cases that involve the removal of an employee from a federal agency for unacceptable performance. The record, however, indicates Guy exhausted all her administrative possibilities in that she appealed the VA's decision to fire her, a hearing was held, AJ Cooper issued an *Initial Decision*, and the MSPB issued a ruling upholding his decision. Guy was notified of her right to appeal that decision to the Court of Appeals, but she did not do so, thus rendering the MSPB's decision final. Other than failing to appeal this decision in federal court, Guy has not provided the Court with any law or evidence which would indicate she was entitled to further adjudication at the administrative level. As such, this assertion, too, must fail.

### D. The Jurisdiction of the MSPB

Next, Guy argues that because the MSPB does not have jurisdiction to hear FCA cases, the Government cannot rely on the findings of the MSPB decision in the present case. The Court agrees that the MSPB does not have the authority to rule on FCA cases, but determines that the doctrine of collateral estoppel does not require such jurisdiction to make a past decision binding in current litigation. As quoted in the Court's July 3, 2006 *Memorandum Opinion*:

> [A] right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and *even if the second suit is for a different cause of action*, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.

*Southern Pacific Railroad v. United States*, 168 U.S. 1, 48-49 (1897) (emphasis added). In concluding the application of the collateral estoppel doctrine was proper in this case, the Court provided a very detailed analysis of this issue and, thus, it feels no need to repeat itself here. Guy's argument on this front is rejected.

### E. Julietta Lewis

According to Guy, her former immediate supervisor, Julietta Lewis, "commanded" her to perform her regular duties during overtime hours and to perform the outside contractor work during regular hours. She reasoned that because of this command, the Government has failed to state a claim for which relief can be granted. The Court, however, has already issued a ruling on this matter. While it did take this specific allegation into consideration when it rendered its ruling, the Court determined that the doctrine of collateral estoppel barred Guy from contending she was given permission to perform her regular duties as overtime and to perform her overtime assignment during regular hours. Guy, however, is free to litigate the issues of: (1) whether the overtime she claimed for performing her regular duties was something that properly entitled her to overtime pay and was not false or fraudulent under the FCA; and (2) how many hours she spent performing her regular work duties during overtime. Based on this earlier ruling, the Court concludes Guy's argument that Julietta Lewis's statement establishes the Government has failed to state a claim for which relief can be granted must be rejected.

### F. The Government's Treatment of Other Employees Who Engaged in Similar Conduct

Next, Guy raises the issue of the Government's treatment of other VA employees who engaged in similar conduct, but were not fired nor sued. Guy contends her coworker, Angela Broxton-Hall, was not sued because she did not file an "employment lawsuit and she did not write the President." She also alleges improper, racist statements by white supervisors during her employment at the VA and unequal pay for black employees.

As to the racist statements by her VA supervisors and the unequal pay, the Court finds that although these allegations, if true, are problematic, they are irrelevant to the present litigation. Indeed, these are allegations which would best served in a discrimination lawsuit, not a case in which the complaining party is a defendant in a fraud case. The same could be said for Guy's retaliation allegations regarding other employees who engaged in similar overtime behavior but were not sued by the Government. The question in the present case is whether Guy acted in contravention of the FCA and received overtime pay to which she was not entitled. Angela Broxton-Hall's conduct and the Government's treatment of said conduct is only relevant to the extent that it sheds any light on the claims against Guy. Guy's brief fails to suggest the presence of any such relevance. Consequently, this argument must fail.

### G. Falsification of Records

Guy challenges the authenticity of the records provided by the Government in support of its claims against her, stating, "I was not aware initially that the Agency had falsified all of the information including the overtime hours, the amount of overtime, the number of pay periods, and pay stubs." She explained that the Government "falsified the bi-weekly pay stubs ... so that they did not reflect the correct number of overtime hours nor the correct amount of overtime for each pay

-8-

period." If these allegations are true, they would be extremely troubling. However, other than offering her unsubstantiated suspicions and a copy of an unidentified document without any explanation as to its significance, Guy has failed to establish the falsity of the documents upon which the Government relied upon in brining forth its claims. Mere allegations of wrongdoing are insufficient to warrant the exclusion of evidence at this stage – or any stage, for that matter – of litigation. If Guy has evidence in support of this allegation, she would best be served to file a motion *in limine* to seek the exclusion of this evidence from the record during trial. In doing so, however, she must provide the Court with more than speculation and conjecture. There must be a logical, well-supported basis to her assertions of falsification. At present, she has provided none. Consequently, the Court rejects this argument, as well.

### H. Guy's Rule 12(b) Defenses

Guy seeks to challenge the claims against her by, among other things, contending the Government has failed to state a claim upon which relief can be granted and failed to properly serve her by certified mail, pursuant to Rule 12(b)(6) and Rule 12(b)(5), respectively. Without judging the merits of these allegations, the Court determines that the allegations set forth in this motion are untimely and, as such, are not entitled to be heard at this time. Rule 12 states in pertinent part, "A motion making any of these defenses shall be made before pleading if a further pleading is permitted." Guy has already filed in an answer (pleading), thus, she cannot now bring forth these defenses *by motion*.

Moreover, Guy has waived any argument for lack of service because she failed to raise the argument in a timely 12(b) motion or to raise it in her answer to the Government's complaint. *See* Fed. R. Civ. P. 12(f). As the defense of failure to state a claim for which relief may be granted can

be raised in an answer, in a motion for judgment on the pleadings, or at trial on the merits, Guy is not barred from raising this defense. However, the present posture of her failure to state a claim defense (in a motion for summary judgment)[2] is improper. She may, nevertheless, raise the defense at trial, so long as it is within the parameters of the Court's July 3, 2006 *Memorandum Opinion* regarding the doctrine of collateral estoppel.

### I.  Guy's Rule 9(b) Argument

Guy contends the Government failed to state its fraud claims with sufficient particularity, as is required under Fed. R. Civ. P. 9(b). Other than stating this conclusion, however, Guy has provided no analysis or law in support of her allegation. Fed. R. Civ. P. 9(b) states in pertinent part, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." "In complying with Rule 9(b), a plaintiff, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. Roby v. The Boeing Co.*, 184 F.R.D. 107, 109-10 (S.D. Ohio 1998) (internal citations and quotations omitted); *see also Michaels Building Co. v. Ameritrust Co.*, 848 F.2d 674, 679 (6th Cir. 1988) (a complaint which sets forth the parties and participants to the alleged fraud, the representations made, the nature in which the statements are alleged to be misleading or false, the time, place, and content of the representations, the fraudulent scheme, the fraudulent intent of the

---

[2]Because Guy relies upon matters and evidence outside that provided in the pleadings, her Rule 12(b)(6) motion can only be considered as a motion for summary judgement pursuant to Rule 56 rather than a motion to dismiss pursuant to Rule 12(b)(6). Notably, it also cannot be considered a motion for judgment on the pleadings pursuant to Rule 12(c) for this very reason.

defendants, reliance on the fraud, and the injury resulting from the fraud, meets the requirements of Rule 9(b)). In the present case, the Government provided all the necessary information to plead fraud with particularity as is required under Rule 9(b):

> (1) Time and place – "During the pay periods *November 4, 1999, through March 12, 2000*, Defendant volunteered to work overtime manually transcribing a backlog of radiology reports *at the VA Medical Center*;"
>
> (2) Content of alleged misrepresentation – "During the pay periods November 4, 1999, through March 12, 2000, Defendant claimed 1,292 hours of overtime worked while employed at the VA Medical Center. ... VA Medical Center records indicate that *Defendant's claims for overtime hours worked were grossly inflated and otherwise false*;"
>
> (3) Reliance on the misrepresentation and injury resulting from the fraud – "*The United States paid these false or fraudulent claims because of the acts of Defendant. ...* By reason of these payments, *the United States has been damaged in the amount of approximately $17,950.00*, exclusive of interest and costs;" and,
>
> (4) The fraudulent scheme – "During the pay periods November 4, 1999, through March 12, 2000, Defendant claimed 1,292 hours of overtime worked while employed at the VA Medical Center. ... VA Medical Center records indicate that *Defendant's claims for overtime hours worked were grossly inflated and otherwise false*"

(Government's Complaint, ¶¶8, 9, 11, 14 and 15) (emphasis added).[3] Moreover, there is some possibility that Guy has waived this Rule 9(b) argument since she failed to raise it either in a pre-answer motion or in her answer. *See United National Records, inc. v. MCA, Inc.*, 609 F. Supp. 33, 38-39 (N.D. Ill. 1984) (the time limits applicable to Rule 12(b) motions may be applied by analogy

---

[3] As the FCA does not require fraudulent intent on the part of a defendant, there was no need for the Government to plead intent to satisfy Rule 9(b) in the present case.

to objections to the sufficiency of a pleading under Rule 9(b)" as the requirements set forth in Rule 9(b) "have been imposed to ensure that a defendant is appraised of the fraud claimed in a manner sufficient to permit the framing of an adequate responsive pleading.")  However, because the Court has already determined Guy's Rule 9(b) argument is without merit, it sees no need to delve into this procedural matter at this time.

**J.  Judge Poster's January 30, 2006 Ruling on Guy's January 24, 2006 *Motion to Dismiss***

Lastly, Guy challenges Judge Polster's January 30, 2006 ruling in which he denied her *Motion to Dismiss* without the benefit of a responsive brief from the Government.  According to Guy, "Judge Polster exhibited extreme prejudice towards me as a black female Pro Se Defendant [sic] and favor to the point of ignoring the law towards the Plaintiff by denying the Motion to Dismiss less than a week after it was filed" (Guy's *Motion to Dismiss, in the Alternative Summary Judgment Motion for Leave to Move for Summary Judgment*, p. 3).

The Court finds this assertion has absolutely no merit. Indeed, Guy's *Motion to Dismiss* on statute of limitations grounds was baseless as the FCA clearly only prohibits actions brought,

> (1) more than *6 years after the date on which the violation of section 3729 is committed, or*
>
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
>
> *whichever occurs last*.

31 U.S.C. §3731(b) (emphasis added).  Thus, the Government was clearly allowed to bring charges under the FCA within six years of the alleged violation.  As the conduct at issue in the present case

took place between November 1999 and March 2000, and the case was filed November 2005, the Government filed within the limitations period, though without a minute to spare. Judge Polster's January 30, 2005 determination, therefore, was perfectly in line with the law. His decision to rule on Guy's *Motion to Dismiss* without the benefit of a responsive brief from the Government was also in line with the law. Indeed, when a motion, standing alone, has no merit, the Court need not wait for a response from an opposing party before ruling. Guy's argument to the contrary has no basis in law and, upon a review of the record, no basis in fact either.

The Court recognizes that as a *pro se* defendant, Guy is likely unfamiliar with the procedures of the Court. One would think that this lack of familiarity would make her more cautious when interpreting the rulings of the Court, especially when they contain conclusions she did not anticipate. It has, however, done the exact opposite. Instead, Guy has automatically assumed a willful misconduct on the part of the Court without a shred of evidence to support it other than her own unsubstantiated suspicions. Indeed, nothing in the record indicates any improper or discriminatory behavior by any individual involved in the present case. Notably, this is not the only time Guy has either heedlessly launched allegations of racism and/or sexism at members of the bench without providing a shred of evidence in support, or made references to her race and sex in a manner which appears only designed to infer similar allegations. Such baseless insults and allegations will no longer be tolerated. Indeed, as a *pro se* defendant, Guy is bound by Fed. R. Civ. P. 11, which requires that all allegations set forth in papers submitted to the Court have evidentiary support (or be likely to have evidentiary support). She, thus, subjects herself to sanctions if she is not compliant with this Rule.

## III. DECISION

Based on the foregoing, the Court DENIES Defendant Annette Guy's *Motion to Dismiss, in the Alternative Summary Judgment Motion for Leave to Move for Summary Judgment.*

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: July 7, 2006